# EXHIBIT A

FILED   MAY 16 1995

RECEIVED

MAR 2 3 1995

51,017
C.
10 p.
1017137

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

LAMAR **LEGARE, et al.**,

Plaintiffs,

v.

SCHOOL DISTRICT OF PHILADELPHIA,
Defendant.

C.A. No. **94-CV-4243**

**CONSENT DECREE.**

Plaintiffs, individually and as class representatives, and the School District of

Philadelphia (the "District"), by counsel, hereby agree as follows for the purpose of

amicably resolving this litigation.

1. *Definitions.*

   a. *High schools and high* school *programs:* This phrase includes all
   senior high schools, including comprehensive, vocational, magnet,
   and other high schools; and all small learning communities within
   senior high schools, as defined below.

   b. *Small learning community (SLC):* A school-designed small
   learning community, vocational program, academy, cities-in-
   schools program, motivation program, magnet program, or other
   "school within a school" program at the senior high level.

   c. *Student with disabilities:* A student with a disability as defined by
   the Individuals With Disabilities Education Act, 20 USC $1400 et
   *seq.,* 34 CFR Part **300,** or Section 504 of the Rehabilitation Act,
   29 USC **§794,** 34 CFR Part 104.

2. *General.* The District will take all necessary action to ensure that:

ENTERED:___MAY 1 6 1995_____

CLERK OF COURT

a. Each student with disabilities has an equal opportunity to participate in the high schools and high school programs that are available to students generally.

b. Each student with disabilities and his or her family receives timely information and guidance concerning the full range of high schools and high school programs that are available within the District; the procedures for obtaining admission; and the nature of the accommodations and supports that will be made available, within these schools and programs, for students with disabilities.

c.. Each student with disabilities is afforded the right to reasonable accommodations within all high schools and high school programs.    These accommodations may include special education support services, if these services can be provided to the student without substantially altering the nature of the program in question.

d. Each student with disabilities has an equal opportunity to participate in, and obtain the educational benefits of, a small learning community. This includes the right to a range of choices among **SLCs** that is reasonably comparable to the range of choices offered to students without disabilities, and the right to be

2

**included** with non-disabled peers to the maximum extent appropriate.

e.  **With** respect to any high school or high school program that **imposes admission criteria** related to ability, school performance, attendance or behavior, a student with disabilities is not excluded **on the basis of those** criteria unless:

    i.   The criteria are essential to successful participation in the school or program, and alternative criteria that do not disproportionately exclude students with disabilities are unavailable; and

    ii.  Even if reasonable accommodations were made for the student within the school or program, the student could not participate in it successfully.

f.  All decisions concerning the accommodations and supports needed by a student with disabilities are made by a team of knowledgeable persons, on the basis of a multidisciplinary evaluation of the student's needs and abilities.

3.  **Public awareness.** By April, 1995, the District will develop and widely disseminate a statement that, beginning in September, 1995, students with disabilities will have the right to reasonable accommodations in all high schools and high school **programs;** and that, by that time, most such options, including all **SLCs** and vocational schools, will have special education and/or other support services in place. The statement will also summarize the other elements of this Consent Decree.

*3*

Dissemination shall include presentation at a meeting of the Board of Education and distribution to the media, and to all relevant District personnel.

*4.* By September, 1995, the written materials describing high school options shall be revised to clarify the application and admission procedures in general, specify that students with disabilities may apply to any high school or high school program, describe the types of accommodations and support services that will be made available for these students, and summarize other key elements of this Consent Decree. These materials will be timely disseminated to all seventh and eighth grade students with disabilities and their parents, and annually updated.

5. The District shall invite representatives of advocacy groups for students with disabilities to participate in meetings, fairs and *other* events designed to inform parents and students of high school options.

6. ***Accommodations and support services.*** By September, 1995, all high schools and high school programs shall be prepared to make reasonable accommodations for students with disabilities, and all SLCs and vocational schools shah have special education support services available. Reasonable accommodations may include special education support services, so long as these services can be provided to the student without substantially altering the nature of the program in question.

*7.* ***Application and admission process.*** For school year 1995-96 and

*4*

thereafter, there will be no admission criteria relative to ability, school performance, behavior or attendance for school-designed small learning communities, academies, cities-in-schools programs, or vocational schools. Other schools and programs may maintain admissions criteria only to the extent that those criteria are essential to successful participation in the school or program, and alternative criteria that do not disproportionately exclude students with disabilities are unavailable. The District will not substantially increase the number of students attending schools and programs with admissions criteria, except in order to comply with a valid court order, entered over the District's objection, specifically mandating such an increase.

8.      By September, 1995, the District will develop a procedure to target all students with disabilities who are expected to transfer to a senior high school for the following autumn; and to conduct a timely multidisciplinary evaluation (MDE) of, and develop a timely individualized education plan (IEP) for, each such student. The procedure, which will be implemented in school year 1995-96 and thereafter, will include at least the following elements:

a.      The MDE team will include persons knowledgeable about high schools and high school programs. If the student or family expresses an interest in schools or programs with which members of the team are unfamiliar, arrangements will be made for contact between team members and persons familiar with those options.

b.      The MDE team will assist the student and family to consider a range of possible high schools and high school programs; identify those in which the student may be especially interested; and identify the types of accommodations and supports, if any, that the

5

student will require in order to participate in these schools and programs.

c. The team will also recommend any modifications or waiver of admissions criteria that it believes appropriate in light of the student's disability. This information will be included in the MDE report.

d. The MDE report will be completed well in advance of the deadline for the student's applications to schools and programs to which s/he seeks admission. The **IEP** may, but need not, be completed by this deadline.

e. The decision as to whether or not a student will be admitted to the programs or schools to which s/he has applied will be made as follows:

 i. With respect to school-designed small learning communities, academies, cities-in-schools programs, and vocational schools (and any other schools or programs that do not impose admissions criteria related to ability, school performance, behavior, or attendance), the decision will be made solely on the basis of other criteria that apply to **non-**disabled and disabled students alike, such as geography, racial balance, etc.

 ii. With respect to schools or programs that maintain valid admissions criteria as described in ¶2(e), above, the decision will be based upon those criteria; however, the student may not be excluded on the basis of those criteria if, with reasonable accommodations, s/he could participate successfully in the program or school in question. The decision on these points shall be made with due consideration for the information about the student that is contained in the MDE report, including any recommendation that the admissions criteria be modified or waived.

f. The **IEP** for the student's first year in high school will be based upon the MDE report and will identify the accommodations,

6

supports and services that s/he will require in the school and program to which s/he is to be assigned.

g. These procedures will also apply during the student's stay in high school, in that MDE and IEP teams will include persons knowledgeable about schools and programs that accept students above the ninth grade; and the process by which students will be permitted to seek transfers to such programs will generally follow the lines set forth above.

h. A student with disabilities retains the right to apply to any high school or high school program that is available to students generally, and/or to request that a school or program modify or waive its admission criteria with respect to him or her, regardless of the views of the other members of the MDE or IEP team.

i. If an IEP team believes that, for a particular student, a specific high school or high school program is the only setting in which s/he can receive an appropriate education, the team retains the right and the duty to recommend that the student be placed in that school or program.

9. *Case-by-case review.* By March, 1995, the District will establish a procedure for impartial review of any individual decision not to admit a student with disabilities to a high school or high school program requested by that student when the decision is based on a reason other than racial balance or the availability of space. The due process hearing procedures set forth in 22 Pa. Code Chs. 14 and 15 will also continue to be available to students with disabilities and their parents. Information concerning the impartial review and hearing procedures will be provided to the student and his or her parents at the time they are notified of the decision not to admit the student.

10.    *Additional measures to ensure equitable participation by students with disabilities.    The* District will review all high schools and high school programs at least annually to determine the extent and nature of participation by students with disabilities, and whether, in order to **fulfill** the requirements of this Order, accommodations and support services must be strengthened. In this review, the District shall also determine, using objective and professional methods, whether, existing admission criteria are consistent with ¶ 2(e) of this Order; if not, they shall be revised or eliminated.   The first such review will be completed by September, 1995.

11.    The District shall solicit the involvement, in this review, of **knowledgeable** persons not employed by the District, including representatives of advocacy groups.

12.    As part of this review process, the District will develop a data collection system, by November, 1995, that will identify the numbers and categories of students with disabilities who are participating in each high school and high school program, the nature and degree of that participation, and the performance of students with disabilities as compared to other students.

13.    Following the annual review, the District will take such corrective action as may be necessary in order to fulfill the requirements of this Order.

14.    The District will continue to require that each proposal for the

establishment of an SLC, and each SLC already in existence, provides for equitable participation by students with disabilities.

15.    For school year **1995-96 and** thereafter, the District will utilize alternative, nondiscriminatory admissions criteria, consistent with this Order, for students with disabilities who seek to enter schools or programs with admissions requirements but who do not have standardized test scores. In addition, as part of its system-wide revision of assessment criteria, the District will require that the criteria which are developed do not discriminate against students with disabilities.

16.    ***Professional development.*** The District will provide professional development for relevant staff at the middle and high school levels, including principals, counselors, special education liaisons, special education supervisors, and others, regarding the availability of accommodations and support services for students with disabilities within high schools and high school programs, and the other matters addressed in this Consent Decree. Such professional development will be offered on an ongoing basis, beginning in April, 1995, for all relevant middle school staff and October, 1995, for all relevant high school staff. In arranging such training, the District will solicit the participation of representatives of advocacy groups for students with disabilities.

17.    ***Miscellaneous. The*** District shall consult with counsel for plaintiffs as it implements this Consent Decree, inform them of its activities, and make available to

9

them copies of all relevant documents.

18.    The issue of attorney's fees and costs is reserved.


FOR **PLAINTIFFS:**                                    FOR THE SCHOOL DISTRICT:


Leonard Rieser                                         Robert T. Lear
Alyssa Fieo                                            Counsel for Defendant
Counsel for Plaintiffs                                 Office of General Counsel
Education Law Center                                   School District of Philadelphia
801 Arch St., Suite 610                                2130 Arch St., 5th Floor
Philadelphia, PA 19107                                 Philadelphia, PA 19103-1390
(215) 238-6970                                         (215) 299-7676


APPROVED and SO ORDERED, this __16th__ day of _____may_____,    **1995:**


_____, J.


10