# EXHIBIT A

**SETTLEMENT AGREEMENT AND RELEASE**

This Settlement Agreement and Release (the "Agreement" or "Release"), is made and entered into as of the Effective Date (as that term is defined below) by and between Myra Taylor ("Parent"), individually and on behalf of her child Noah Taylor (the "Student") (date of birth: 7/3/2012; Student ID No: 10010791) (collectively "Plaintiffs" or "Releasors") and the School District of Philadelphia (the "District" or "Releasee"). The District and Plaintiffs are referred to herein collectively as the "Parties."

**WHEREAS**, Plaintiffs, through counsel, filed a complaint in the United States District Court for the Eastern District of Pennsylvania (the "Court") on July 2, 2026, alleging disability discrimination (the "Complaint"); and

**WHEREAS**, Plaintiffs specifically challenge the outcome of the District's Individualized Review of Student conducted as part of its high school selection process (the "Claim"); and

**WHEREAS**, the Parties desire to compromise the Complaint and resolve all disputes and controversies arising out of or in any way related to the Claim.

**NOW, THEREFORE,** the Parties enters this Confidential Settlement Agreement and General Release ("Agreement") and hereby agree as follows:

1. **TERMS:** In order to resolve all disputes and litigation, the Parties agree as follows:

   A. **Placement:** Student's placement for the 2026-2027 school year is at George Washington High School in the International Baccalaureate ("GWIB") program. This Agreement does not stop Student from applying to other schools and programs through the school selection process for the 2027-2028 school year. Parent and Student understand that there are grade point average and attendance

requirements for continued enrollment in GWIB independent from this Agreement.

**B. Compensatory Education:** The District agrees to fund a total of four hundred (400) hours of compensatory education at a rate of $60/hour, totaling $24,000.

i. The 400 hours specified herein shall be used wholly and exclusively for appropriate educational, vocational, therapeutic, and/or remedial instruction, programs, services, courses, materials and equipment that further the goals of Student's current or future IEPs and/or 504 plans and/or will assist Student in overcoming the effects of Student's disability. Student may use these hours irrespective of any future determinations about his eligibility for disability-related accommodations, special education, related services, or assistive technology.

ii. Permissible uses include tutoring; standardized test preparation courses; all related services under the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 et seq. ("IDEA") and its implementing regulations, 34 C.F. R. Part 300; non-matriculated course-work at post-secondary institutions for educational or professional purposes; Student's conference registration fees for educational and professional conferences related to Student's educational program; summer educational programs (including travel expenses as provided below); subscriptions to education-related online and paper periodicals; and college application consulting. Any services for which the hours herein are to be utilized shall be provided by

appropriately licensed and credentialed individuals and/or licensed facilities and the cost of each compensatory education hour shall not exceed $60.00 per hour. The hours shall be used to supplement, rather than supplant, services, and programming, available under public programs, including Student's current and future Individualized Education Program ("IEP") and/or 504 Plan. The hours will be used for services and programming not provided under Medicaid or any other governmental program for which Student is or may be eligible. Funding for reasonably-priced educational evaluations, conducted by qualified examiners, is a permissible use of the compensatory education. Any evaluation funded through compensatory education must be provided to the District upon completion. Reimbursement for transportation costs to and from service providers, at the then-applicable reimbursement rate approved by the United States Internal Revenue Service, when such transportation is provided by Parent or her designees in private vehicles, or the actual fee charged for such transportation when provided by licensed private carriers or by public transportation, shall be a permissible use of the compensatory education hours. Compensatory education may also be used for technology purchases. A technology purchase is defined as one reasonably priced computer or laptop or tablet or augmentative and alternative communication device. A technology purchase is permitted once every two years during the term of this agreement. There is no limit

on the purchase of educational software. Internet and/or wi-fi access is excluded. Up to $2,000.00 of compensatory education may also be used toward fees associated with Student's participation in a Council on International Educational Exchange ("CIEE") travel abroad program.

iii. The following will not be reimbursable or payable under this Agreement from the compensatory education hour fund: services provided prior to the execution of the agreement; legal fees; tuition for post-secondary education college matriculation programs; tuition for out-of-District programs or placements / tuition for elementary or secondary out-of-District program or placement in lieu of the District's FAPE obligation; tuition for vocational courses at a post-secondary level of curriculum; services, other than transportation, provided by a blood relative of a Parent or Student; services provided by any individual or entity in which or with whom Parents or counsel have a business interest; transportation costs of service providers; vehicles of any sort; clothing; leisure travel; appliances; home improvements; furniture; recreational activities such as but not limited to attendance at amusement parks, participation in sports activities, movies and vacations; recreational equipment; activities intended for personal enrichment not directly related to a specific educational need; services, programs and/or equipment required solely for medical needs; entertainment oriented technology items

such as: Wii; DS apparatus; Apple phones; mobile phones; video games; gaming computers; gaming laptops; 3D printers; internet access.

iv. In the event the actual cost of any of the compensatory education hours exceeds $60.00 per hour, District shall receive additional credit toward Student's entitlement to awarded hours on a proportional basis consistent with the funding responsibility as outlined herein. Should the services be billed on a basis other than hourly, Student's remaining entitlement shall be reduced by one (1) hour for every $60.00 paid to the provider. On a quarterly basis, provider(s) of compensatory services shall provide a representative of the District with documentation substantiating hours used to date. Said documentation shall include a description of the service, the date(s) provided, the credentials of the provider(s) of the service and the cost. Documentation shall be provided to: The School District of Philadelphia, Attn: Compensatory Education, compedu@philasd.org. The District may modify the individual to receive documentation and shall notify Parent of any such change.

v. The District will pay independent providers that have been pre-authorized as vendors within sixty (60) days of the receipt of appropriate documentation as set forth above. Bills and or invoices shall be provided to: The School District of Philadelphia; Attn: Compensatory Education; compedu@philasd.org;. Parent recognizes that in order to obtain reimbursement for compensatory education expenses, parent must submit

documentation substantiating services provided, payments made, and an executed W-9 for non pre-authorized vendors.

vi. Any compensatory education hours remaining as of Student's 22nd birthday (7/3/2034) shall be forfeited. Notwithstanding any provisions herein related to the provision of compensatory education to this Student beyond the age of 22, the District will no longer be the LEA for this student upon Student's graduation, disenrollment, or upon Student's 22nd birthday, whichever occurs sooner.

**C. Reevaluation:** Parent consents to the District conducting an evaluation at the beginning of the 2026-2027 school year to assess Student's current disability-related needs.

**D. Notice Requirement before Plaintiffs File Lawsuit:** For the 2026-2027 school year only, Plaintiffs agree to provide the District with a written notice of at least thirty (30) calendar days prior to initiating any due process complaint, administrative claim, or legal action. During this 30-day period, the Parties agree to act in good faith to convene, discuss, and attempt to address and resolve any concerns or alleged complaints regarding Noah's educational program or placement. The District reserves the right to raise a procedural objection to any filing made if this 30-day notice period was not provided. This provision serves solely as a procedural notice agreement and does not waive, forfeit, or alter any prospective procedural or substantive rights of the Parties under the IDEA, Section 504, or applicable law.

**E.** If Student remains a resident of Philadelphia and is attending a Parent-procured private school, and Parent requests that the District offer FAPE and a placement within the District, Parent shall submit placement request to ossfaperequest@philasd.org.

**F.** **Complaint Dismissal:** Parent agrees to withdraw the Complaint with prejudice. The Parties will jointly request a consent order from the Court approving their agreement, with language acknowledging that the District agrees to reimburse the Parent for reasonable attorneys fees, and that the Court retains jurisdiction to decide reasonable fees if the Parties cannot reach an agreement. The Parties will request that the Court keep the non-fee-related terms of the Agreement confidential.

2. **ATTORNEYS FEES AND COSTS:** Parent counsel will, within sixty (60) days of receiving the fully executed Agreement, provide a detailed invoice of attorneys' fees and costs to the Office of General Counsel. The District will, within sixty (60) days of receiving a detailed invoice and fully executed Settlement Agreement, pay reasonable attorney fees and costs, related to the Claim (E.D.P.A. Civil Action No. 26-cv-4617), to the attention of the Law Office of Benjamin J. Hinerfeld, for time expended and costs on this matter to the date of this Agreement. The Agreement to pay attorney fees and costs is not an admission that Parent is a "prevailing party" pursuant to IDEA, 20 U.S.C. §1415(i)(3)(B).

**3. CLAIMS RELEASED:** Parent, individually and on behalf of Student, for and in consideration of the mutual promises and terms set forth in this Agreement, and other

valuable consideration, hereby unconditionally releases and forever discharges the District, its past and present officers, employees, agents, servants and attorneys, the Board of Education, their heirs, executors and administrators, successors and assignees of and from any and all actions, causes of actions, suits, claims, losses, injuries, damages and demands whatsoever in law or equity, known or unknown, accrued or not accrued, especially arising out of the public education of Student which against the Releasees, they ever had, now has or which their heirs, executors, administrators, hereafter can, shall or may have from the beginning of time through the date Parent signs this Agreement.

**A.** It is expressly understood and mutually agreed that this Agreement is intended to resolve all claims by Parent individually and on behalf of Student in any forum, including all claims for money damages, tuition reimbursement, attorney fees and costs, expert fees and/or compensatory education relating to educational programming afforded to Student under federal, state and common law and which arise under and pursuant to the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 et seq. ("IDEA"), its implementing regulations, 34 C.F. R. Part 300; Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, its implementing regulations, 34 C.F. R. Part 104; the Americans with Disabilities Act of 1990, 42 U.S.C. § 1983, 1988; 20 U.S.C. § 1232 et seq., and its implementing regulations; the Civil Rights Act of 1871, as amended, 42 U.S.C. § 1983, 1985, the Civil Rights Attorney's Fee Award Act of 1976, as amended, 42 U.S.C. § 1988; the United States Constitution; the Pennsylvania Constitution; the Pennsylvania Public School Code of 1949, as amended 24 P.S. § 1-101 et seq., the

Pennsylvania Human Relations Act, as amended, 43 P.S. § 951 et seq.; Chapters 14 and 15 of the Regulations of the State Board of Education, 22 Pa. Code Ch. 14 & 15; and any other state or federal law and any and all other claims (administrative and/or legal) through the date Parent signs this Agreement.

**B.** Nothing in this Agreement shall be construed as a release by Parent or Student of any claims that may arise after the date of this Agreement regarding events that occur after the date Parent signs the Agreement.

4. **ENTIRE AGREEMENT;** This Agreement supersedes any prior oral or written agreement with respect to the subject matter hereof and constitutes the entire, integrated agreement between the Parties; there are no written or oral understandings or agreements, directly or indirectly connected with this Agreement, that are not incorporated herein.

5. **NO ADMISSION OF LIABILITY:** Plaintiffs agree and acknowledge that they accept the terms specified in this Release as full and complete compromise and settlement of matters involving disputed issues, including attorneys' fees and costs, and that the terms of this release and settlement shall not be considered an admission of any liability or wrongdoing by the District. It is understood and acknowledged by the Parties that this Release does not constitute an admission of liability or wrongdoing on the part of any party and that this Release is purely an act of compromise of disputed claims.

6. **BINDING ON SUCCESSORS AND ASSIGNS:** This Agreement shall be binding upon and inure to the benefit of the successors, assigns, heirs, executors, administrators, and legal representatives of the respective Parties hereto and is enforceable against them in accordance with its terms.

7. **CONFIDENTIALITY:** The terms and the contents of this Agreement are and shall remain confidential. Neither the Parties nor their attorneys will publish, publicize, comment or disclose to any person or persons or request, invite, support or cause another individual to publish, publicize, to comment or to disclose to anyone the terms or the contents of this Agreement. This Paragraph is not intended to limit necessary disclosure of information by the Parties to their attorneys, accountants, financial consultants, medical professionals, service providers and to regulators and to the Board of Public Education, or as may otherwise be required by law. Additionally, either Party may disclose the terms and conditions of this Agreement to effectuate its terms and this Agreement shall be admissible in any court action or administrative proceeding to enforce this Agreement. If the Agreement is requested in a Pennsylvania Right-to-Know ("RTK") request, the District agrees to maintain Parent's and Student's confidentiality, as required by Pennsylvania law. If the Agreement becomes public, Plaintiffs are no longer bound to any confidentiality provision.

8. **MULTIPLE COUNTERPARTS:** This Agreement may be executed in counterparts, each of which shall constitute an original, but all of which, when taken together, shall constitute one instrument. The transmission of a signed copy of this Agreement by one Party (or its counsel) to the other Party (or its counsel) by facsimile transmission, email or similar electronic means will have the same force and effect as delivery of the original, manually signed counterpart so transmitted.

9. **AUTHORITY TO SETTLE AND RELEASE:** Parent represents and warrants that she possesses the legal decision-making authority on behalf of Student Plaintiff Noah Taylor necessary to enter into this Agreement on Student's behalf.

10. **CONSTRUCTION:** This Agreement has been drafted jointly, so there shall be no presumption of construction against any Party. The language of all parts of this Agreement shall be construed as a whole, according to the fair meaning, and not strictly for or against any Party.

11. **COMPLIANCE WITH GOVERNMENTAL REGULATIONS AND AUTHORITIES**: Nothing in this Agreement will be construed as preventing the District, its successors, assigns, heirs, executors, administrators, and legal representatives from complying with its duties under statute or common law, from acting in accordance with a subpoena or court order, or as waiving the rights of the District under statute or common law.

12. **CONSULTATION WITH ATTORNEYS:** The terms of this Agreement have been completely read, considered and understood by the Parties, who have had a reasonable opportunity to consult with legal counsel of their choice prior to execution. In making this Release, the Releasors represent that they are relying solely on their own judgment and information, together with the advice of their legal counsel, and are not relying upon any statements, representations, opinions or recommendations made by any of the Releasees.

13. **NO FUTURE OR ADDITIONAL CLAIMS:** Releasors understand and agree that by entering into this Agreement they will be forever barred and precluded from seeking any

further compensation or other relief from the Releasees relating to any and all alleged injuries and damages which arose from the Claim.

14. **VOLUNTARY AGREEMENT:** The acceptance of the terms of this Agreement is a voluntary compromise and settlement of a disputed claim or claims. Fulfillment of the terms of this Agreement is not an admission of any liability by any Party named in the Agreement.

15. **EFFECTIVE DATE:** The Effective Date of this Agreement shall be the date on which the Agreement is executed by all parties.

16. **SEVERABILITY:** If any provision of the Agreement should be determined to be illegal and/or unenforceable by any court of law, the remaining provisions shall be severable and enforceable in accordance with their terms.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

**IN WITNESS WHEREOF,** intending to be legally bound hereby, the undersigned has set her hand upon this Agreement.

Myra Taylor (Sep 1, 2026 16:05:37 EDT)

**MYRA TAYLOR**, on her own behalf and on behalf of her minor child Noah Taylor

**Date:** 09/01/2026

**IN WITNESS WHEREOF,** intending to be legally bound and on behalf of the School District of Philadelphia, the undersigned has set her hand upon this Agreement.

**DR. NATHALIE NEREE**
**Chief of Special Education and Diverse Learning**
**School District of Philadelphia**

**Date:** 09/10/2026

# Taylor, Noah - Draft Settlement Agreement - 9.1.2026 - SDP revised.docx

Final Audit Report 2026-09-01

| | |
|---|---|
| Created: | 2026-09-01 |
| By: | David Lapp (david@hinerfeldlaw.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAjzb4ovoMR-XIa7_yn69WVW-p7wtsccvW |

## "Taylor, Noah - Draft Settlement Agreement - 9.1.2026 - SDP revised.docx" History

Document created by David Lapp (david@hinerfeldlaw.com)
2026-09-01 - 6:03:38 PM GMT

Document emailed to Myra Taylor (myraa923@gmail.com) for signature
2026-09-01 - 6:03:43 PM GMT

Email viewed by Myra Taylor (myraa923@gmail.com)
2026-09-01 - 8:04:59 PM GMT

Document e-signed by Myra Taylor (myraa923@gmail.com)
Signature Date: 2026-09-01 - 8:05:37 PM GMT - Time Source: server - Signature Appearance Selected: MOBILE_DRAW

Agreement completed.
2026-09-01 - 8:05:37 PM GMT